# CIRCUIT COURT OF THE CITY OF STAUNTON

Commonwealth of Virginia

v.

Newton Brown Townsend

Commonwealth of Virginia

v.

Gary F. Lovell

January 21, 2000

BY JUDGE HUMES J. FRANKLIN, JR.

In both of these cases, the defendants have challenged the constitutionality of Virginia Code § 46.2-357 and assert that a conviction based on such a charge would be a violation of each defendant's rights under the Equal Protection Clause of the 14th Amendment of the United States Constitution and Article I, Section 11, of the Virginia Constitution.[1] In 1999, Virginia repealed §§ 46.2-351 through 46.2-355 of the Virginia Code, which sections governed the Declaration of Habitual Offenders of the Motor Vehicle laws of the Commonwealth of Virginia, Acts 1999, c. 945, 987. However, the legislature left in force Virginia Code § 46.2-357, a statute that provides for the punishment of convicted violators who previously have been declared habitual offenders.

Both the Commonwealth and the defense seem to agree that the General Assembly's repeal of §§ 46.2-351 to 46.2-355 has created a classification of

---

[1] The sole remaining issue in both cases is the constitutionality issue. The Court, having heard the evidence in both cases, is satisfied beyond a reasonable doubt that both Townsend and Lovell were, in fact, operating motor vehicles in violation of § 46.2-357 of the Code of Virginia.

similarly situated persons subject to dissimilar treatment. They further agree that this classification thus must be analyzed under the three tier system of review described in *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). It is further undisputed that the intermediate scrutiny is inapplicable to the case at bar, thus the question before the Court is whether the correct standard of review is strict scrutiny or rational basis. After a thorough review of the authorities cited and the arguments posed, the Court feels that the proper test is "rational basis." The Court is further satisfied that the classification bears a "'reasonable' relation to a single 'legitimate' governmental objective." *New Orleans v. Dukes*, 427 U.S. 297, 303 (1976). It is unnecessary to inquire into the legislative history and determine what the basis of the legislation was, in fact, before the rational basis test is satisfied "if the legislature could have reasonably concluded that the challenged classification would promote a legitimate state purpose." *Exxon Corp. v. Eagerton*, 452 U.S. 176, 196 (1983).

There can be no question that the General Assembly had a legitimate governmental objective in changing the habitual offender statute, i.e., highway safety, and further that it has a compelling interest in punishing those who disobey its laws, including those who break its motor vehicle laws. The change in the habitual offender statutes clearly bears a reasonable relationship to this governmental objective, besides repealing the habitual offender status, the very same bill made a number of other changes in the Virginia Code.[2] It

---

[2]   Instead of giving courts the option to revoke the driver's license of someone who was convicted of involuntary manslaughter resulting from driving while intoxicated and causing an accident that resulted in a fatality, the new legislation requires courts to do so. See Va. Code Ann. § 18.2-36.1(D).

The legislation sets punishments, which did not previously exist, for someone who drives on a suspended operator's license when the reason for the suspension was a conviction for involuntary manslaughter resulting from driving while intoxicated. See Va. Code Ann., § 18.2-36.1(F).

Instead of suspending the operator's license of someone convicted for the maiming of another resulting from driving while intoxicated for a specified amount of time, the new legislation suspends their license indefinitely. See Va. Code Ann., § 18.2-51.4(B).

The legislation sets punishments, which did not previously exist, for someone who drives on a suspended operator's license when the reason for the suspension was a conviction for the maiming of another resulting from driving while intoxicated. See Va. Code Ann., § 18.2-51.4(D).

The bill changes a third or subsequent DUI offense within ten years from a Class 1 Misdemeanor to a Class 6 Felony. See Va. Code Ann., § 18.2-270.

is patently clear from those changes that the General Assembly, rather than decreasing, is increasing the penalties for driving under the influence of intoxicants and while someone who is charged with driving under the influence, driving under the influence/manslaughter, or driving under the influence/maiming,[3] they can no longer be declared an habitual offender. The person who commits those offenses is much worse off under the new statutory scheme, and, while the new statutory scheme treats certain individuals differently than those after the statutory changes, nonetheless, this disparate treatment of similarly situated individuals, the Court feels, had a rational basis which is all that the Equal Protection Clause requires. Therefore, this Court declines to adopt the defendant's position that such a conviction would be in violation of the defendant's rights under the Equal Protection Clause of the Fourth Amendment of the United States Constitution and Article I, Section 11, of the Virginia Constitution.

---

The bill increases the mandatory minimum for a fourth or subsequent DUI offense within ten years from ten days to one year. See *id.*

The bill requires intervention and participation in the Virginia Alcohol Safety Awareness Program for offenders that were not previously required to participate. See Va. Code Ann., § 46.2-355.1.

[3] Three of the predicate offenses that led to being declared an habitual offender.